IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.

LINDA FARHAT,
*individually and on behalf of all others similarly situated*,

    Plaintiff,

vs.

UNIQUE HEALTHCARE SYSTEMS, LLC d/b/a AFC URGENT CARE PINELLAS PARK,

    Defendant.
_____/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Linda Farhat brings this class action against Defendant Unique Healthcare Systems, LLC d/b/a AFC Urgent Care Pinellas Park, and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

### NATURE OF THE ACTION

1. This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA"), and its implementing regulations.

2. At the start of the COVID-19 pandemic, the Federal Communications Commission warned companies like Defendant that telemarketing made under the guise of offering purportedly "free" COVID-19 related services would not be tolerated

and that such calls would be considered violations of the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 35 FCC Rcd. 2840 (2020).

3. Undeterred, Defendant sent Plaintiff and other consumers text message solicitations purporting to offer "free" COVID-19 testing and antibody testing for which Defendant, even after Plaintiff requested for the text messages to stop. As many consumers learned, there was no "free" testing, and Defendant would typically demand payment of $130.00 per test claiming that the consumers' insurance did not cover the testing.

4. Several consumers who fell for Defendant's advertising scheme voiced their complaints on the Internet, including the following:

> **R R.**: Where to begin...I went to AFC Urgent care to get a Covid-19 test that I needed in order to have surgery. Their website says, FREE Covid testing for insured AND uninsured. When I was called to the front desk, after waiting outside in a line for 4 hours (yes,4!), I was told I had to pay $130 for the Covid test. I am insured, but apparently my company is not included on their list. Regardless, I was told FREE. I went ahead and paid because I needed to get the test done, and I had already waited 4 hours. When I checked in, I asked them how long it would take to get the test results back. The gentleman told me up to 72 hours. I was happy about that because I needed the results back by 5 days. Their website also claims rapid results. So, I waited an additional 2 hours to be tested! I asked the nurse as to how/when to get my results, and she said, 3-9 days! 3-9 days is not the same as up to 3 days. I would not have stayed and done the test there if I would have known that. Now I may have to reschedule surgery and get re-tested. Conclusion: 1)Waited 6 hours to get tested 2)Had to pay $130 for a "free' test 3)May not get results in time.

\*          \*          \*

**Laura D.**: Took my mom there for a "free" COVID test. Was originally told they did not take her insurance, but later received apologies from two staff members who said they were mistaken. They said that her co-pay was $20 and I would receive credit for $110 because I had paid $130. The credit should have posted in days. Now it has been weeks and neither the billing department nor the location has resolved. Fortunately my mom is fine. However, I will never take her there again and would not recommend.

\*          \*          \*

**Elizabeth H.**: When we arrived dozes of people standing around in and out waiting for the "free" Covid test. Well they give priority to the people with insurance (so they can bill your insurance for this Free test" or who are willing to pay $100.00 for the not "free" rapid test….[1]

5. In a recent article entitled *Urgent Care Business Resilient During Pandemic*, the owner of sister facilities in Clearwater and Citrus Park openly discussed how COVID-19 testing has been a profit center during the pandemic for urgent care facilities like Defendant: "'We kind of hunkered down for about a month and then things started picking back up again. And now our regular business has started coming back again,' he added. **The rebound is due in part to COVID-19 testing and antibody testing**."[2]

6. Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct. Plaintiff also seeks statutory damages on behalf of herself and the

---

[1] www.yelp.com/biz/afc-urgent-care-seminole-seminole; (last visited on Jan. 5, 2021).

[2] https://sbdctampabay.com/urgent-care-business-resilient-during-pandemic/; (last accessed on Jan. 5, 2021) (emphasis supplied).

Class members, as defined below, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

## PARTIES

7. Plaintiff is, and at all times relevant hereto was, an individual and a "person" as defined by 47 U.S.C. § 153(39), a citizen and resident of Pinellas County, Florida, and the subscriber and/or sole user of the cellular telephone number 727-***-1111 (the "1111 Number").

8. Defendant is, and at all times relevant hereto was, a limited liability company and a "person" as defined by 47 U.S.C. § 153(39) that maintains its primary place of business and headquarters at 7101 US Highway 19 North, Pinellas Park, Florida 33781.  Defendant directs, markets, and provides business activities throughout the State of Florida.

## JURISDICTION AND VENUE

9. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Plaintiffs seek up to $1,500.00 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

10. Venue is proper in the United States District Court for the District of Arizona pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction,

and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction.

## FACTS

11.     On or about April 8, 2020, April 20, 2020, and May 1, 2020, Defendant sent the following text message solicitations to Plaintiff's 1111 Number:





12. The purpose of the messages was to advertise and promote Defendant's COVID-19 testing for which Defendant typically charges $130.00.

13. Plaintiff received the subject text messages within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district.

14. Upon information and belief, Defendant caused similar text messages to be sent to individuals residing within this judicial district.

15. Plaintiff is the subscriber and/or sole user of the 1111 Number and is financially responsible for phone service to the 1111 Number. Plaintiff primarily uses the 1111 Number for residential purposes.

16. Plaintiff never provided Defendant with express written consent to contact her on the 1111 Number with automated text message solicitations.

17. Plaintiff revoked any type of consent or permission Defendant may have had to contact her with text message solicitations as depicted in the text messages above.

18. Defendant failed to honor or abide by Plaintiff's opt-out requests and continued to repeatedly text message Plaintiff after she asked for the messages to stop.

19. Defendant's failure to abide by Plaintiff's opt-out requests is indicative of Defendant's lack of a written policy for maintaining internal do not call procedures.

20. Defendant's failure to abide by Plaintiff's opt-out requests is indicative of Defendant's failure to institute procedures for maintaining a list of persons who request not to receive telemarketing calls.

21. Defendant's failure to abide by Plaintiff's opt-out requests is indicative of Defendant's failure to maintain an internal do not call list, as well as inform and train its personnel engaged in telemarking in the existence and the use of any internal do not call list.

22. Defendant's failure to abide by Plaintiff's opt-out requests demonstrates that Defendant does not record opt-out requests or place subscribers' names and telephone number on any do-not-call list at the time the requests are made.

23. Defendant's unsolicited calls caused Plaintiff to suffer injuries including annoyance and disruption to her daily life, as well as violation of Plaintiff's legal rights under the TCPA.

24. The unsolicited communications further harmed Plaintiff in that she wasted approximately 10-15 seconds reviewing and attempting to stop Defendant's text messages.

## CLASS ALLEGATIONS

### PROPOSED CLASS

25. Plaintiff brings this lawsuit as a class action on behalf of herself individually and on behalf of all other similarly situated persons as a class action pursuant to Florida Rule of Civil Procedure 1.220(b)(2) and (b)(3). The "Class" that Plaintiff seeks to represent is comprised of two classes and defined as:

> **Internal Do Not Call Class: All persons within the United States who, within the four years prior to the filing of this Complaint, (1) were sent a text message from Defendant or anyone on Defendant's behalf, (2) regarding Defendant's COVID-19 related services, (3) to said person's residential telephone number, (4) after making a request to Defendant to not receive future text messages.**

26. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

27. Upon information and belief, Defendant has placed calls to cellular telephone numbers belonging to thousands of consumers. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

28. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class

members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

29.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are: [1] Whether Defendant initiated telemarketing calls to telephone numbers; [2] Whether Defendant continued to text message individuals after they requested for the messages to stop; [3] Whether Defendant failed to properly maintain and internal do not call list and procedures; [4] Whether Defendant's conduct was knowing and willful; [5] Whether Defendant is liable for damages, and the amount of such damages; and [6] Whether Defendant should be enjoined from such conduct in the future.

30.     The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits unsolicited text messages to telephone is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

31.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

32.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly,

Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

33.　A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

34.　The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
## <u>VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)</u>
### (On Behalf of Plaintiff and the Internal Do Not Call Class)

35. Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1 through 34 as if fully set forth herein.

36. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> **(1)** *Written policy.* Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> **(2)** *Training of personnel engaged in telemarketing.* Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

37. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

38. Plaintiff and the Internal Do Not Call Class members made requests to Defendant not to receive calls from Defendant.

39. Defendant failed to honor Plaintiff and the Internal Do Not Call Class members' opt-out requests.

40. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

41. Thus, Defendant has violated 47 C.F.R. § 64.1200(d).

42. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Internal Do Not Call Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

47   As a result of Defendant's knowing or willful conduct, Plaintiff and the Internal Do Not Call Class members are entitled to an award of $1,500.00 in statutory damages per violation.

48   Plaintiff and the Internal Do Not Call Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to section 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Linda Farhat, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b) An award of actual and statutory damages for Plaintiff and each member of the Classes;

c) As a result of Defendant's negligent violations of 47 U.S.C. §§ 227, *et seq.*, and its implementing regulations, Plaintiff seeks for herself and each member of the Class $500.00 in statutory damages for each and every violation pursuant to 47 U.S.C. § 277(b)(3);

d) As a result of Defendant's knowing and/or willful violations of 47 U.S.C. §§ 227, *et seq.*, and its implementing regulations, Plaintiff seeks for herself and each member of the Classes treble damages, as provided by statute, up to $1,500.00 for each and every violation pursuant to 47 U.S.C. § 277(b)(3)(B) and § 277(b)(3)(C);

e) An order declaring that Defendant's actions, as set out above, violate the TCPA and its implementing regulations;

f) An injunction requiring Defendant to cease all unsolicited text messaging activity, and to otherwise protect the interests of the Classes;

g) An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, recipient's consent to receive calls made with such equipment;

h) An injunction requiring Defendant to cease all text messaging activity to individuals who have requested to be removed from Defendant's contact list;

i) A declaration that Defendant's practices described herein violate 47 C.F.R. § 64.1200(a)(1)(iii);

j) A declaration that Defendant's violations of 47 C.F.R. § 64.1200(a)(1)(iii) were willful and knowing; and

k) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant takes affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendant and the communication or transmittal of the text messages as alleged herein.

DATED: May 29, 2021

Respectfully Submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

**EISENBAND LAW, P.A.**
Michael Eisenband
Florida Bar No. 94235
515 E. Las Olas Boulevard, Suite 120
Ft. Lauderdale, Florida 33301
MEisenband@Eisenbandlaw.com
Telephone: 954.533.4092