UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


LINDA FARHAT, et al.,

   Plaintiff,          CASE NO. 8:21-cv-01319-SDM-JSS

v.

UNIQUE      HEALTHCARE
SYSTEMS,  LLC  d/b/a  AFC
URGENT CARE PINELLAS PARK,

   Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS

COMES NOW, Defendant, UNIQUE HEALTHCARE SYSTEMS, LLC d/b/a AFC URGENT CARE PINELLAS PARK, and pursuant to Rule 12(b)(1) and 12(b)(6) and Moves to Dismiss Plaintiff's Amended Complaint, and states as follows:

### I. Introduction

This is not a typical case brought pursuant to the Telephone Consumer Protection Act (TCPA). As this Court is well aware, the TCPA prohibits the use of automated dialing systems to "make any call (**other than a call made for emergency purposes** or made with the prior express consent of the called party) … to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227 (b)(1)(A)(iii). However, in the instant case, the messages at issue are excepted

from the TCPA pursuant to a Declaratory Ruling from the Federal Communications Commission ("FCC") due to the ongoing COVID-19 pandemic. *See In re Emergency Robocalls Related to Pandemic are Lawful Under TCPA*, 35 FCC Rcd 2840, 2020 FCC LEXIS 1038 (F.C.C. March 20, 2020).

Plaintiff cannot state a claim as a matter of law because the messages at issue are excepted from the TCPA under the emergency purpose exception and cannot serve as the basis of Plaintiff's claim. See 47 U.S.C § 227(b)(1)(A)-(B). Defendant was permitted by the FCC's March 2020 Declaratory Ruling to communicate information about **medically administered** COVID-19 testing to their existing patients "**without violating federal law**." *In re Emergency Robocalls Related to Pandemic are Lawful Under TCPA*, 35 FCC Rcd 2840, 2020 FCC LEXIS 1038 (F.C.C. March 20, 2020). As a result, Plaintiff's claims fail as a matter of law.

Plaintiff Linda Farhat ("Farhat") further lacks Article III standing in the event that the messages are not excepted as she has failed to allege a concrete injury-in-fact according to controlling case law.

## II. Standard of Law

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. "… [T]he tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

As standing is jurisdictional, a Defendant can move to dismiss a complaint for lack of standing under Rule 12(b)(1). *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). A motion to dismiss for lack of subject matter jurisdiction may be by facial or factual attack. *Id.* "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* (internal citations omitted). "… [A] factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings … ." *Id.*

The burden is on the Plaintiff to establish subject matter jurisdiction by a preponderance of the evidence when a Defendant moves to dismiss based on a factual challenge. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). The Court may weigh the evidence and determine its power to hear the case. *Id.*

The standing requirement exists "to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). A federal court does not have the power to hear cases where Article III standing is lacking. *See Worthy v. City of Phenix City, Ala.*, 930 F.3d 1206, 1213 (11th Cir. 2019).

### III.    Argument

### a.    The messages at issue are excepted from the TCPA and cannot serve as the basis for violation of Federal law.

Under the TCPA, it is unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA empowers the FCC to implement the Act through regulation, and the Eleventh Circuit has held that the FCC's regulations should be given great, if not controlling weight. *See, e.g., Murphy v. DCI Biologicals Orlando, Ltd. Liab. Co.,* 797 F.3d 1302, 1308 (11th Cir. 2015) and *Mais v. Gulf Coast Collection Bureau, Inc.,* 768 F.3d 1110, 1119 (11th Cir. 2014) *(citing CE Design, Ltd. v. Prism Business Media, Inc.,* 606 F.3d 443, 450 (7th Cir. 2010)("a district court gives great weight, if not controlling weight, to final decisions of the FCC implementing and interpreting the TCPA").

Calls or texts made for an emergency purpose, on the other hand, are exempt from the TCPA's prior consent requirements. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 31 F.C.C. Rcd. 9054, 9062 (2016). The emergency purpose exception is to be interpreted broadly. *See In the Matter of the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 2736 (1992) ("[t]he

legislative history of the TCPA indicates a congressional intent to interpret the term 'emergency' broadly rather than narrowly.").

Plaintiff has alleged the messages received were sent in violation of the TCPA. *See* Complaint. The FCC however, issued a Declaratory Ruling in March 2020 that the COVID-19 text messages of which Plaintiff complains are expressly **excepted** from the TCPA prohibition as made for "emergency purposes." 47 CFR 64.1200(a)(1); *In re Emergency Robocalls Related to Pandemic are Lawful Under TCPA*, 35 FCC Rcd 2840, 2020 FCC LEXIS 1038 (F.C.C. March 20, 2020).

The FCC's Declaratory Ruling in March 2020 due to the national pandemic and health crisis, provided that "…health care providers … may lawfully communicate information about the novel coronavirus as well as mitigation measures without violating federal law." The FCC on its own motion, on March 20, 2020, ordered "that certain callers may lawfully make automated calls and send automated text messages to wireless telephone numbers when such calls are necessary to protect the health and safety of citizens pursuant to the TCPA's 'emergency purposes' exception." *Id.*

Within the FCC's Order, the Commission explained that the President on March 13, 2020, proclaimed that COVID-19 pandemic constitutes a national emergency and state governors soon followed suit. Based on the pandemic, and citing its own *Blackboard-Edison* Declaratory Ruling, the FCC explained its inherent

power to declare that automated calls to wireless numbers, necessary due to "health risks," are made for an emergency purpose and do not require prior express consent to be lawful. The pandemic is a bona fide emergency, and information about how to obtain legitimate, medically-administered testing and antibody testing from a patients' existing medical provider without exposing oneself to COVID-19 is relevant to the practice's existing patients.

Mindful of the purpose of the TCPA and rules implementing it promulgated by the FCC, the Commission issued specific guidance on what qualifies as a call made for an emergency purpose, specifically noting the caller and the content of the call. Among the permitted callers: a health care provider. "Second, the content of the call must be solely informational, made necessary because of the COVID-19 outbreak, and directly related to the imminent health or safety risk arising out of the COVID-19 outbreak." See *Id.* at ¶ 7.

The only Court to apply the FCC's Declaratory Ruling to a claim alleging TCPA violations due to text messages relating to COVID-19, dismissed the case, which was brought by Plaintiff's current counsel – who serially files TCPA claims across the United States. *Gabertan v. Walmart, Inc.*, No. C20-5520BHS, 2021 U.S. Dist. LEXIS 41988, at *13 (W.D. Wash. Mar. 5, 2021). The text message at issue conveyed information to existing Walmart pharmacy customers on how to safely pick up their prescriptions during the pandemic. The District Court for the

Western District of Washington dismissed the plaintiff's complaint against Walmart, finding that the message Walmart sent as "…facially, squarely within the emergency exception as articulated in the Ruling." *Id.* at *13.

Notably, the court specifically held that the TCPA emergency exception was <u>not</u> an affirmative defense and it was clear from the face of the complaint, which included the message at issue, that it was exempt from the TCPA "as a matter of law." *Id.* at *15.

In the instant case, there is no dispute that Defendant sent its text messages to Plaintiff and the putative class members during a state of emergency. In its ruling, the FCC gave examples of exempted calls: "a call made by a county official to inform citizens of shelter-in-place requirements, quarantines, **medically administered testing information**, or school closures necessitated by the national emergency would be made for an emergency purpose as such measures are designed to **inhibit the spread of the disease**." Id. at 2842. The messages sent in the instant case were directly related to the imminent health or safety of Plaintiff or the class members, and provided information on how to receive a COVID-19 test in the early months of the pandemic when tests were not widely available and the State of Florida was in a lockdown.

AFC is a health care provider. **AFC is Ms. Farhat's health care provider**. Second, the content of the text messages is solely informational, related to COVID-

19, and related to the health and safety risk of COVID-19 and mitigating that risk and inhibiting the spread of the disease. Each of the messages contains information regarding the opportunity for medically administered COVID-19 testing by Ms. Farhat's existing health care provider. The first two inform of the availability of medically administered COVID-19 testing at two AFC locations. The third message provides information on available medically administered antibody testing. The fourth message provides information on medically administered COVID-19 testing and treatment.

The four messages are excepted from the TCPA under the emergency purpose exception. 47 C.F.R. § 64.1200. Defendant was permitted by the FCC's declaratory action to communicate information about medically administered COVID-19 testing "without violating federal law." *In re Emergency Robocalls Related to Pandemic are Lawful Under TCPA*, 35 FCC Rcd 2840, 2020 FCC LEXIS 1038 (F.C.C. March 20, 2020).

Plaintiff attempts to allege a violation of Federal law. However, the FCC has declared that the messages Plaintiff received cannot serve as the basis of a claim for a violation of Federal law as the messages fall squarely within the TCPA emergency purposes exception as confirmed by the FCC. *Id*. Plaintiff's Amended Complaint fails on its face to state a claim as a matter of law. Dismissal with

prejudice is appropriate as the exempt messages can never serve as the basis of a violation of Federal law.

### b. Plaintiff cannot establish Article III standing and fails a facial or factual attack.

Even if Plaintiff had a viable claim under the TCPA, which she does not, this Court should dismiss the claims of nonresident putative class members for lack of subject matter jurisdiction. In the instant case, Plaintiff has not and cannot adequately plead facts demonstrating the messages at issue violate the TCPA, and, in addition, there can be no concrete injury in fact, an essential element to establish Article III standing. *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019); *Perez v. Golden Tr. Ins., Inc.*, 470 F. Supp. 3d 1327, 1328 (S.D. Fla. 2020); *Daisy, Inc. v. Mobile Mini, Inc.*, 489 F. Supp. 3d 1287, 1295 (M.D. Fla. 2020); *Eldridge v. Pet Supermarket Inc.*, 446 F. Supp. 3d 1063 (S.D. Fla. 2020).

### i. Plaintiff cannot survive a facial attack.

To meet the "irreducible constitutional minimum" of Article III standing, the plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Here, Plaintiff has failed to establish the required "injury in fact," which is the "[f]irst and foremost of standing's three elements." *Spokeo*, 136 S. Ct. at 1547

(*quoting Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). "A plaintiff has an injury in fact if he suffered an invasion of a legally protected interest that is concrete, particularized, and actual or imminent." *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1002 (11th Cir. 2016) (*citing Lujan*, 504 U.S. at 560), *reh'g denied*, 855 F.3d 1265 (11th Cir. 2017). "A 'concrete' injury must be de facto; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548; *Nicklaw*, 839 F.3d at 1002.

The Supreme Court in *Spokeo* held that a plaintiff does not automatically satisfy the injury-in-fact requirement "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1548. Thus, a "bare procedural violation, divorced from any concrete harm" does not suffice to establish Article III's injury in fact requirement. *Id*. Rather, Article III demands that a plaintiff have suffered a "concrete injury even in the context of a statutory violation." *Id*. at 1549. Thus, only conduct that violates the statute at issue, the TCPA, confers standing. *Id*. at 1547.

As has been discussed, the messages at issue cannot violate the TCPA. However, even if they did, Plaintiff's Complaint is subject to dismissal on its face. Plaintiff attempts to allege injury in the form of "annoyance," "disruption" of her daily life from the informational text messages from her physician's office related to medically administered COVID-19 testing, which are excepted from the TCPA.

The Eleventh Circuit in *Salcedo* authoritatively rejected the notions that "annoyance, "disruption," or "wasted time" constitute a concrete injury in a TCPA texting case, and Plaintiff provides nothing but conclusory allegations in the Complaint. Accordingly, not only do the allegations of "wasted time" fail to withstand a facial attack in light of *Salcedo*, they do not come close to surviving a factual attack given Plaintiff's complete failure to identify any facts that would support those allegations. *See Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019).

Florida's District Courts have applied the reasoning in *Salcedo* in holding that "wasted time from receiving [] unauthorized text messages [] do not state a concrete injury-in-fact." *Eldridge v. Pet Supermarket, Inc.*, 446 F. Supp. 3d 1063, 1070 (S.D. Fla. 2020). Rather than quantitatively, courts have considered the qualitative nature of the injury. The alleged injury in Plaintiff's Amended Complaint is more akin to "the kind of fleeting infraction upon personal property that tort law has resisted addressing." *Daisy, Inc. v. Mobile Mini, Inc.*, 489 F. Supp. 3d 1287, 1295 (M.D. Fla. 2020) (*quoting Salcedo*, 936 F.3d at 1172). "And it is 'more akin to walking down a busy sidewalk and having a flyer briefly waived in one's face' than a harm conferring Article III standing." *Id.*

As recently as July 2020, the Florida Southern District dismissed, *sua sponte,* a putative class action complaint in which the plaintiff alleged violation of TCPA based on two text messages received without prior consent. *Perez v. Golden Tr. Ins.,*

*Inc.*, 470 F. Supp. 3d 1327, 1328 (S.D. Fla. 2020). In that case, the plaintiff alleged he wasted 60 seconds of his time (more than the 10-15 seconds in the instant case). *Id.* In dismissing, the Court cited the Eleventh Circuit's decision in *Salcedo v. Hanna,* and found that Plaintiff he could not establish concrete injury in fact. *Id.* "Like the harm alleged in *Salcedo,* the alleged injury here is 'isolated, momentary, and ephemeral.'" *Id. at 1329* (*citing Salcedo v. Hanna*, 936 F.3d at 1171).

And in yet another example, the Southern District of Florida dismissed a TCPA claim, again brought by Plaintiff's current counsel, related to an unsolicited text invitation to a lecture series. *Fenwick v. Orthopedic Specialty Inst., PLLC*, No. 0:19-CV-62290, 2020 U.S. Dist. LEXIS 21566, at *8 (S.D. Fla. Feb. 4, 2020). In that case, plaintiff unsuccessfully argued *Salcedo* did not apply as she received more than one text message and thus had standing. The Southern District, following *Salcedo,* focused on the qualitative nature of the injury and determined that Fenwick's allegations that she "wasted at least fifteen seconds reviewing defendant's unwanted messages" insufficient to confer standing. *Id. at *12-13*

The facts of *Fenwick* are similar to the instant case (were the messages in the instant case not excepted from the TCPA by the FCC's Declaratory Ruling). As will be discussed herein, Ms. Farhat provided express written consent to receive the first message. Two of the four messages at issue were confirmatory texts acknowledging Ms. Farhat's opt-out request. "A confirmatory text message, which

is the only additional message sent, does not violate the TCPA." *Id. citing Zemel v. CSC Holdings LLC*, No. CV 18-2340-BRM-DEA, 2018 U.S. Dist. LEXIS 201917, 2018 WL 6242484, at *5 (D.N.J. Nov. 29, 2018). And thus the final message is insufficient to confer standing under the litany of cases following *Salcedo* (again, were it not already excepted from the TCPA by the FCC).

### ii.    Plaintiff cannot survive a factual attack.

As has already been discussed, the messages at issue, per the FCC Declaratory Ruling, cannot violate the TCPA, therefore there is no standing. However, even if the Court were to hold that Plaintiff pleaded facts sufficient to establish Article III standing and overcome the "facial attack," she has fallen well short of overcoming the factual attack to maintain this lawsuit. The Eleventh Circuit has explained, that as here, when a "factual" attack is made on the plaintiff's standing to sue, "… [N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (internal citations omitted).

The Court may evaluate its power to hear a case by considering "matters outside the pleadings, such as testimony and affidavits… ." *Beaver v. Inkmart, LLC*, Case No. 12-60028, 2012 WL 4005970 at *5-6 (S.D. Fla. Sep. 12, 2012) (*citing Lawrence*, 919 F.2d at 1529). There are several key pieces of information this Court

should consider which lead to the inevitable conclusion that the Court lacks jurisdiction and there is no injury "likely to be redressed by a favorable judicial decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

In the instant case, the messages at issue did not and cannot violate the TCPA. In any event, Plaintiff's Amended Complaint cannot withstand a factual attack. First, the Court should consider that Plaintiff did provide express written consent to receive the text messages as a patient of the practice. Plaintiff here utterly misleads and fails to inform this Court that she consented to receive text messages from Defendant, her health care provider. Further, Plaintiff's express written consent was provided to her prior to her initiation of litigation in state court and this Court. The following allegation is completely and knowingly false:

> 16. Plaintiff never provided Defendant with express written consent to contact her on the 1111 Number with automated text message solicitations.

*See Amended Complaint*, [Doc. 11 at ¶26].

On her patient registration form, Ms. Farhat provided the "1111 Number" and signed the consent to receive text messages. Ms. Farhat's signature appears below the following statement:

> I agree to give AFC its employees and/or its agents permission to contact me at any telephone number or email address associated with my account. This includes cellular telephone numbers or other wireless devices. I understand this could result in a charge from my phone or device carrier to me for talk time, SMS messaging/texts or data usage for emails or voice mails. I also understand methods of contact may include

pre-recorded/artificial voice messages and/or the use of automatic dialing devices as applicable.

As to the others, they cannot violate the TCPA, because the messages are excepted from the TCPA, and Plaintiff cannot show concrete injury-in-fact fact to confer standing under existing case law. Indeed, Plaintiff's allegations of injury-in-fact are contained in a two conclusory sentences:

> 35. Defendant's unsolicited calls caused Plaintiff to suffer injuries including annoyance and disruption to her daily life, as well as violation of Plaintiff's legal rights under the TCPA.
>
> 36. The unsolicited communications further harmed Plaintiff in that she wasted approximately 10-15 seconds reviewing and attempting to stop Defendant's text messages.

*See Amended Complaint*, [Doc. 11].

Plaintiff's Amended Complaint cannot withstand a factual jurisdictional attack and, as a result, the Amended Complaint must be dismissed.

## IV.    Conclusion

The messages at issue are expressly excepted from the TCPA and cannot form the basis for a claim of violation of Federal law. *See In re Emergency Robocalls Related to Pandemic are Lawful Under TCPA*, 35 FCC Rcd 2840, 2020 FCC LEXIS 1038 (F.C.C. March 20, 2020). Plaintiff's Amended Complaint fails as a matter of law and must be dismissed with prejudice.

Even if the messages at issue are not excepted from the TCPA, Plaintiff cannot withstand the facial or factual attack to Article III standing. This Court lacks

subject matter jurisdiction. In addition, Plaintiff in the instant case provided her express written consent to receive text messages from Defendant her medical provider, and fails to disclose the same to the Court. Accordingly, the Court should dismiss the Amended Complaint.

WHEREFORE, for the reasons stated herein, Defendant UNIQUE HEALTHCARE SYSTEMS, LLC d/b/a AFC URGENT CARE PINELLAS PARK respectfully requests that this Court dismiss Plaintiff's Amended Complaint.

## LOCAL RULE 3.01(G) CERTIFICATION

I hereby certify that I have conferred with the opposing party in a good-faith effort to resolve the foregoing Motion and certify that the Plaintiff objects to the instant Motion.

/s/Isaac R. Ruiz-Carus
ISAAC R. RUIZ-CARUS, ESQUIRE
Florida Bar No.: 17004
Email: irr.service@rissman.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 23, 2021, I filed a true and correct copy of the foregoing via CM/ECF which will distribute notifications via email to the following counsel of record:

Manuel S. Hiraldo, Esquire

Hiraldo P.A. (mhiraldo@hiraldolaw.com)

Michael Eisenband, Esquire

Eisenband Law, P.A. (MEisenband@Eisenbandlaw.com)

/s/Isaac R. Ruiz-Carus
ISAAC R. RUIZ-CARUS, ESQUIRE
Florida Bar No.: 17004
Email: irr.service@rissman.com
Rissman, Barrett, Hurt,
 Donahue, McLain & Mangan, P.A.
1 North Dale Mabry Highway, 11th Floor
Tampa, FL  33609
Tel. (813) 221-3114
Fax (813) 221-3033
Attorneys for Unique Healthcare Systems,
LLC d/b/a AFC Urgent Care Pinellas Park

RBM/IRR/KAG